**Opinion issued September 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00984-CV

_____

## WALTER L. BOYAKI, RUBEN P. HERNANDEZ, AND MIRANDA & BOYAKI, Appellants

## V.

## JOHN M. O'QUINN & ASSOCIATES, PLLC D/B/A THE O'QUINN LAW FIRM, AND MUSSLEWHITE & ASSOCIATES, P.C., Appellees

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2008-75827

## MEMORANDUM OPINION

Defendants/appellants Walter Boyaki, Ruben P. Hernandez, and Miranda & Boyaki (collectively, "Boyaki group") appeal (1) the trial court's summary judgment in favor of plaintiffs/appellees John M. O'Quinn & Associates, PLLC

d/b/a The O'Quinn Law Firm and Musslewhite & Associates, P.C. (collectively, "O'Quinn group"), (2) the trial court's order imposing sanctions on the Boyaki group and another lawyer (who is not a party to this appeal), (3) the trial court's appointment of a special master, (4) the trial court's failure to transfer the underlying case to a different Harris County District Court, and (5) the Harris County administrative judge's refusal to recuse the trial judge. We reverse and remand the attorneys' fees awarded to the O'Quinn group in the trial court's summary judgment and affirm the trial court's judgment and sanctions order in all other respects.

## Background

### A. O'Quinn group's lawsuit

On December 30, 2008, the O'Quinn group sued the Boyaki group, and that suit was assigned to the 127th Harris County District Court. The O'Quinn group pleaded a claim for breach of an "agreement as to the method for contingent attorneys' fees earned in the matter styled: Cause No. 199936433A, *Vicente Ramirez v. Gulf Technical Servs.*; in the 190th Judicial District Court of Harris County, Texas; SEVERED FROM: Cause No. 99-36433; *Abel Rudolpho Esquivel, et al v. Kellogg Brown & Root, Inc., et al.*; In the 190th Judicial District Court of Harris County, Texas." (*Ramirez* case).

## 1. The *Ramirez* case in the 190th

In the 1995/1996 time frame, the O'Quinn group began representing 180+ Mexican Nationals "who were victims of the DLB 269 Disaster." The O'Quinn group eventually filed a personal injury suit on behalf of these individuals that was assigned to the 190th Harris County District Court. According to the O'Quinn group, around 2004 the Boyaki group began interfering with the contractual relations between the O'Quinn group and its Mexican National clients in that suit.

As a result of the dispute over which team of lawyers represented which clients and what, if any, fees were owed to each team, Judge Jennifer Elrod (then presiding over the 190th District Court) held a Rule 12[1] hearing. The O'Quinn group asserts in its petition that "both teams of lawyers agreed, on the record, in open court, to present this dispute to a Special Master to be appointed by Judge Elrod." The court entered an Agreed Order appointing the Honorable Retired Justice Lee Duggan "to determine which lawyer represents which client and to determine the percentage of fees, if any, owed by each Plaintiff to a particular attorney." The order states that, "[p]ursuant to the agreement of the parties, Judge Duggan's findings of fact and conclusions of law are final and non-appealable."

---

[1] TEX. R. CIV. P. 12 ("A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. . . . ").

### 2. The O'Quinn Group's suit against the Boyaki group in the 189th

The O'Quinn group filed a separate tortious interference/defamation lawsuit that was assigned to the Harris County 190th. Judge Elrod recused herself, and that case was transferred to the Harris County 189th.

### 3. The Boyaki group's suit against the O'Quinn group in the 327th

The Boyaki group then filed a tortious interference/defamation lawsuit against the O'Quinn group in the El Paso 327th district court. According to the O'Quinn group's petition in the underlying case here, this suit was a "mirror-image" of their Harris County suit, and—over the years—the O'Quinn group "ha[s] had to obtain approximately six separate TROs to keep the [Boyaki group] from proceeding on various aspects of the El Paso case."

### 4. Special Master Proceedings

In December 2004, Justice Duggan presided over several days of hearings and determined which lawyers represented which of the clients in the *Ramirez* case. The O'Quinn group and the Boyaki group agreed to defer requesting a ruling about what actual fees, if any, were owed by the clients to each of the two groups until the merits of the *Ramirez* case were ultimately resolved.

### 5. The *Ramirez* case settlement

In early 2005, the *Ramirez* case in the 190th court globally settled. Given Justice Duggan's familiarity with the claims, Judge Elrod appointed Justice

4

Duggan to preside over the settlement. Justice Duggan reviewed each client's file and apportioned the global settlement among clients. Judge Elrod approved his submitted findings. One of the defendants' requirements of the settlement was that settlement conferences be conducted with each client, on video, before a court reporter and a judge. The parties agreed to conduct these settlement conferences before Justice Duggan in Laredo and Judge Chew in the 327th court in El Paso.

During this settlement process, the Boyaki group challenged the expenses charged to clients by the O'Quinn group. That dispute was submitted to binding arbitration in Houston before Randy Butler.

**B.** **The Boyaki group's objection to the final attorneys' fees resolution**

On December 12, 2008, immediately after the arbitration on expenses concluded, Justice Duggan was scheduled to begin the last round of hearings in Houston on the attorneys' fees issue. After hours on December 11, 2008, the Boyaki group filed, in the El Paso 327th district court, a motion to recuse Justice Duggan from presiding over the special master proceedings scheduled to begin the next day. The O'Quinn group obtained a TRO from the ancillary Harris County judge to prevent the Boyaki group from going forward with a hearing in the El Paso 327th court.

## C.    The Underlying proceedings

On December 30, 2008, the O'Quinn group filed the underlying proceeding, alleging that the parties "agreed to proceed with the fee dispute before Judge Duggan with no right of appeal," and that the O'Quinn group fully performed its contractual obligations and was prepared to enter the final round of hearings before Justice Duggan on December 12, 2008 and abide by his ruling. This suit was assigned to the Harris County 127th, and then the Civil Administrative Judge transferred the case to the 190th on January 7, 2009 (Judge Patricia Kerrigan, Judge Elrod's successor, presiding).

The O'Quinn group set its request for a temporary injunction for hearing on January 9, 2009 in the 190th court. Two days before that hearing date, on January 7, 2009, the Boyaki group filed a notice of removal in federal court, but—contrary to the certificate of service indicating service was made on the O'Quinn group on the day of filing—the O'Quinn group claims that it did not receive notice until January 8, and that the Boyaki group did not file the notice with the 190th court until after 5:00 p.m. on January 8. The 190th cancelled the hearing scheduled for the 9th in response to the notice of removal.

The federal district court granted the O'Quinn group's motion for remand. In the remand order, the district court found the Boyaki group's removal to be frivolous and a violation of Federal Rule of Civil Procedure 11. The O'Quinn

group then sought, and was awarded, sanctions against the Boyaki group (as well as another lawyer on the removal pleadings, Heriberto Ramos) in the 190th based upon its conduct with regard to the removal.

The Boyaki group then filed a motion to recuse Judge Kerrigan, arguing that her sanctions order demonstrated that she will not rule impartially in the underlying case. That motion was denied by the Presiding Judge of the Second Administrative District, the Honorable Olen Underwood.

## D.     The Rule 11 settlement agreement and the trial court's summary judgment

In June 2009, the lawyers finally mediated and signed a "Settlement Agreement," which they filed in the 190th court on July 14, 2009 as a "Rule 11 Agreement entered into between John O'Quinn, Walter Boyaki, Charles B. Musslewhite, Jr., Ruben Hernandez and Victor Cruz." Pursuant to that agreement and at the request of Justice Duggan, on June 30, 2009, the trial court signed an order permitting distribution of $3,227,000 to the O'Quinn group from the court's registry, with $50,000 retained in the court registry for contingencies.

The parties continued to quibble over compliance with some terms of the settlement, including the requirement that both sides sign mutual releases. Also, one of the Boyaki group, Walter Boyaki, indicated to the Judge Kerrigan that he was unwilling to state on the record that a final settlement had been reached unless the trial court agreed to lift the sanctions order. The court refused.

7

In December, 2011, the O'Quinn group filed a motion for summary judgment to enforce the settlement agreement, arguing that it had materially complied with the agreement's terms, but that the Boyaki group had breached the agreement. The motion also requested attorneys' fees. The Boyaki group responded that summary judgment was inappropriate because "there was only a tentative agreement to settle" that was "not accomplished due to the actions" of the O'Quinn group.

After several more hearings during which the court expressed the view that the Rule 11 agreement was a valid settlement and urged the parties to move forward with the agreement's terms, the court granted the O'Quinn group's motion for summary judgment, awarded $145,350.00 in attorneys' fees to the O'Quinn group, and the Boyaki group timely appealed.

## ISSUES ON APPEAL

The Boyaki group brings the following eight issues:

1. "The Trial Court failed to evaluate the evidence and failed to recognize fact issues in granting Appellees' motion for summary judgment because as a matter of law there were numerous material issues of facts in dispute and they were not legally sufficient to grant summary judgment."

2. "The Trial Court incorrectly applied the law and incorrectly evaluated the law in finding an enforceable Rule 11 agreement when all that was before the court was a tentative agreement to agree."

8

3. "The Trial Court had no jurisdiction to order sanctions against the Appellants because only a U.S. District Judge could have ordered sanctions for a failed attempt at removing a state case to federal court."

4. "The Trial Court erred in applying the law and abused its discretion in awarding attorneys feels to the Appellees where there was no evidence warranting attorneys' fees, when the fees were not proved up according to Texas Supreme Court standards and when Appellees suffered no damage."

5. "The Trial court abused its discretion in not finding the Appellees' claims barred by quasi-estoppel for misconduct or inconsistent positions on the part of Appellees."

6. "The Trial court incorrectly applied the law when it appointed and ordered the parties to proceed with their case before a special master when the parties did not agree to a special master and the circumstances of the case did not warrant a special master."

7. "The Trial Court ignored the law and the local rules in not transferring this case back to the 127th District Court or to the 189th District Court because Appellees had the case 'attracted' to the wrong court under the Harris County local rules of court."

8. "The Trial Court abused its discretion in not recusing the Trial Judge due to obvious bias and lack of impartiality."

In addition to disputing the merits of the Boyaki group's arguments, the O'Quinn group objects to the Boyaki group's "failure to make appropriate citations to the record, failure to include necessary documents in the record, and failure to include documents as proper parts of the record."

9

## SPECIAL MASTER, TRANSFER, AND RECUSAL

The Boyaki group challenges the trial court's summary judgment on several grounds unrelated to the merits of the summary judgment, which we address first. We conclude these complaints are either without merit or waived.

### A. Special Master

The Boyaki group contends that the trial court erred by appointing a special master that was not agreed to by the parties. Justice Duggan was originally appointed in an "Agreed Order Appointing Special Master"—signed by Judge Elrod, judge of the 190th, in the personal injury cause number 1999-36433A (the *Ramirez* case), to determine "which attorney represents each of the Plaintiffs, and specify the percentage or amount of fees, if any, to be received by each attorney in connection with work on this case." The crux of the Boyaki group's argument here is that Judge Duggan was appointed only in the *Ramirez* case cause number, and that he could not continue his role in determining attorneys' fees without the Boyaki group's consent, after his "term, as set out in the order expired, and the 190th finished and closed the case without extending the term of the Special Master."

The O'Quinn group responds that the Boyaki group consented to the appointment and actually submitted to Justice Duggan's authority to decide on the distribution of attorneys' fees, and agreed in writing to abide by his findings. The

10

O'Quinn group also pointed out that the Boyaki group appeared in court on the record to participate with Justice Duggan, and even volunteered to handle tax issues for him in his role as special master. The Boyaki group also sought to compel the O'Quinn group to "abide by" Justice Duggan's findings and relied upon an agreement in which they agreed "to be bound by Justice Duggan's ruling." Finally, the O'Quinn group asserts that the Boyaki group's complaint is barred by laches and note that the Boyaki group does not specify what relief it seeks here regarding Justice Duggan's role in the case.

Rule 171 of the Texas Rules of Civil Procedure governs appointments of special masters. Generally, "[t]he appointment of a master lies within the sound discretion of the trial court and should not be reversed except for a clear abuse of that discretion." *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex. 1991). When parties consent to appointment of a special master, the appointment is not subject "to the same strictures as one imposed by the court" under Rule 171, and to "the extent the parties consent to the reference it will ordinarily not be subject to challenge." *Id*.; *see also Young v. Young*, 854 S.W.2d 698, 701 (Tex. App.—Dallas 1993, writ denied) (when agreement differs from what is provided under Rule 171, "the parties are bound by the language in the agreed order").

The agreed order in the *Ramirez* case, which the Boyaki group does not dispute accurately reflected their agreement, delegated to Justice Duggan the task

11

of determining the scope of representation and fees owed "to each attorney in connection with work on this case," i.e., the *Ramirez* case. The underlying suit here—although brought under a new cause number—is premised on the O'Quinn group's claim that the Boyaki group reneged on its agreement to proceed before Justice Duggan on the issue of attorneys' fees for work on the *Ramirez* case. The Boyaki group cites us no authority for the proposition that its consent to submit that particular issue to a special master was only effective in the *Ramirez* cause number, but not in a separate cause number brought to enforce that very consent.

The transcripts from the various hearings reflect that Justice Duggan continued to be involved in this case, including helping the parties come to an ultimate settlement. But—while the Boyaki group complains generally about Justice Duggan's continued role in resolving the parties' dispute—there is no indication in the record that the parties' fee dispute was ultimately decided by Justice Duggan; rather, the dispute was voluntarily resolved by the parties in a Rule 11 mediated settlement agreement. The summary judgment order that is the subject of the Boyaki group's appeal here is premised on that Rule 11 agreement—not on a decision by Justice Duggan. The Boyaki group in fact has not articulated any impact that Justice Duggan had on the settlement that was ultimately reached or on the trial court's summary judgment that is the subject of this appeal. *See* TEX. R. APP. P. 44.1(a) (no judgment may be reversed on appeal absent a showing

12

of harm); *see also Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 89 (Tex. App.—El Paso 2012, no pet.). Because we conclude the Rule 11 agreement is an enforceable settlement agreement, the lawyers' settlement of their fee dispute renders any dispute over a special master's role in the fee dispute before the voluntary settlement moot. *E.g.*, *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 188 (Tex. App.—Fort Worth 2006, pet. denied).

We overrule the Boyaki group's sixth issue.

## B.    Transfer

The underlying case was originally assigned to the 127th Harris County court, and then transferred a week later under the Harris County Local Rules by Judge Tracy Christopher, the Civil Administrative Judge, to the 190th. Judge Kerrigan later made findings that the case should have originally been assigned to the 190th and that the transfer was proper.

The Boyaki group contends that the underlying case was improperly transferred to 190th for "no reason other than forum shopping" by the O'Quinn group. According to the Boyaki group, the case should have been transferred back to the 127th or, alternatively, the case should have instead tracked to the 189th. The Boyaki group insists that it "is obvious on its face that the tracking system for the Harris County District Clerk's office was tampered with." Accordingly, it

argues, "[a]ll of the orders of the 190th should be voided as a violation of the rules."

The O'Quinn group contends that the transfer to the 190th was proper, and argues that the Boyaki group has preserved nothing for review, as it cites nothing in support of the accusations of forum shopping and document tampering in the district clerk's office. TEX. R. APP. P. 38.1(i). We agree.

The *Ramirez* case was in the 190th court when the issue arose about which lawyers represented which clients and what fees were owed for that representation. In the 190th, the lawyers agreed to submit these issues to a special master. The underlying suit was brought to enforce that agreement to proceed before the special master in determining attorneys' fees due for work in the *Ramirez* case. The Boyaki group has not demonstrated that the transfer of the underlying case to the 190th was improper and has not cited any authority in support of their accusations of impropriety on behalf of the O'Quinn group and/or the clerk's office staff.

We overrule the Boyaki group's seventh issue.

## C. Recusal

In the trial court, the Boyaki group filed a motion to recuse Judge Kerrigan, citing one reason—i.e., that by sanctioning Heriberto Ramos for the improper removal of the case, Judge Kerrigan had demonstrated bias against an important witness. Specifically, the Boyaki group argued that Ramos (who is not counsel of

14

record or a party, but who was counsel on pleadings removing the underlying cause to federal court) is necessary to their defense in the underlying case. Because Judge Kerrigan demonstrated alleged bias against Ramos, the Boyaki group argued she would "not rule impartially concerning the testimony of Mr. Ramos."

In their brief here, the Boyaki group argues that "the presiding administrative Judge erred in denying the motion to recuse the trial court judge" because it was "subject to a series of abuses at the hands of the Trial Judge, all of which called into question the impartiality of the Court." In addition to the reason cited in the trial court motion (i.e., alleged bias against Ramos), the Boyaki group lists eighteen other reasons in its brief, which include complaints brought under other points of error in its brief (i.e., the trial court's refusal to transfer the case back to the 127th and the trial court's sanctioning lawyers in the Boyaki group for removing the case), as well as numerous reasons unsupported by record citations (i.e., the trial court "mak[ing] disparaging remarks about the Defendants that they should get another mentor besides Boyaki," "having them appear constantly in her court knowing they were from out of town," and "demonstrate[ing] a pattern which indicates the 190th would rule against these Defendants on whatever issue the Trial Court had before it.").

"A judge must recuse in any proceeding in which: (1) the judge's impartiality might reasonably be questioned; [or] (2) the judge has a personal bias or prejudice concerning the subject matter or party." TEX. R. CIV. P. 18b(b). "An order denying a motion to recuse may be reviewed only for abuse of discretion." TEX. R. CIV. P. 18a(j)(1)(A). The erroneous denial of a motion for recusal does not render the court's orders void, but instead only reversible. *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding). Grounds for recusal can be waived if not properly raised in a motion to recuse. *Id.*

Neither the administrative judge's order denying the motion to recuse nor the record from the hearing on the motion is included in the record.[2] The only reason for recusal cited in the motion filed in the trial court (i.e., the trial court's sanctions order) is not a proper basis for recusal. TEX. R. CIV. P. 18a(a)(3) (stating that a motion for recusal "must not be based solely on the judge's rulings in the case"); *Grider v. Boston Co.*, 773 S.W.2d 338, 346 (Tex. App.—Dallas 1989, writ denied), *disapproved on other grounds by Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 256 (Tex. 2002) (same).

---

[2]     A trial judge faced with a motion to recuse has two options: recuse herself or refer the case to the administrative judge to assign another judge to hear the motion. *McLeod v. Harris*, 582 S.W.2d 772, 773 (Tex. 1979). Judge Kerrigan referred the motion to recuse to the Presiding Judge of the Second Administrative District, the Honorable Olen Underwood. According to the O'Quinn group's brief, Judge Underwood held a hearing and denied the motion.

16

There is no indication that any of the other reasons the Boyaki group cited in their brief were presented to the trial court or administrative judge. We will not address arguments in support of recusal that are not supported by citations to the appellate record or that are presented here in the first instance. *Evans v. Hoag*, 711 S.W.2d 744, 746 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also* TEX. R. APP. P. 33.1(a), 38.1(i).

We overrule the Boyaki group's eighth issue.

## THE SUMMARY JUDGMENT

The Boyaki group lodges several challenges to the merits of the trial court's summary judgment. Specifically, it argues that the Rule 11 was not a contract, but rather a "tentative agreement to agree" with too many uncertain terms, and thus cannot support a breach of contract claim. It also contends that the O'Quinn group should be barred by quasi-estoppel from relying on the Rule 11 agreement. Finally, it argues that the trial court erred by awarding attorney's fees.

### A. Standard of Review

We review the trial court's grant or denial of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that (1) no genuine issue

of material fact exists and (2) the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–6 (Tex. 2003) (citing *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). In reviewing a traditional summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam). "A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of its cause of action or defense as a matter of law." *Elliot–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (citations omitted); *see also* TEX. R. CIV. P. 166a(b), (c). The summary judgment movant has conclusively established a matter if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## B. The Rule 11 Agreement

"If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (West 2011); *Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.—Houston [14th Dist.] 1995,

writ denied). An agreement is enforceable if it is "complete within itself in every material detail, and [ ] contains all of the essential elements of the agreement." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). The intent of the parties to be bound is an essential element of an enforceable contract, *see Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988), and is often a question of fact. *Id*. But where that intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law. *Cf. Padilla*, 907 S.W.2d at 461–62.

Texas Rule of Civil Procedure 11 states that, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." "To satisfy the 'in writing' provision of Rule 11, the same contract principles apply that are used to determine when a 'writing' satisfies the statute of frauds." *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 265 (Tex. App.—Fort Worth 1999, no pet.) (citing *Padilla*, 907 S.W.2d at 460). "Thus, a Rule 11 settlement agreement is not enforceable unless it is complete within itself as to every material detail and contains all the essential elements of the agreement so the contract can be ascertained from the writing, without resort to oral testimony." *Id.*

19

### a. The trial court correctly determined that the parties had an enforceable settlement agreement.

The document at issue is entitled "Settlement Agreement." Among other things, it provides for (1) dismissal with prejudice of suits between the parties in various courts, (2) indemnity on behalf of clients and lawyers in favor of the various lawyers, (3) an agreement for Boyaki, Hernandez, Ramos, Echegaray and Victor Cruz to appear in the 190th under oath to attest that they have audited the O'Quinn group's fee statements and found no valid claims for overcharges against the O'Quinn group, (4) mutual releases signed by both sides, (5) Boyaki's agreement to dismiss sanction allegations in the supreme court and sign a statement "that allegations regarding sanctions motion before Judge Chew was mistaken," (6) certain clients to sign release and indemnification in favor of the O'Quinn group by August 6, 2009, (7) the O'Quinn group and Boyaki group to each sign releases on behalf of all the clients in favor of each other by July 15, 2009, (8) the O'Quinn group's representation that they will not oppose Boyaki's motion for reconsideration of sanctions in 190th, (9) "The Boyaki Group to get $300,000.00 from monies in the registry of the 190th Court to cover claims for fees and expenses by Boyaki, Hernandez, Echegaray, Cruzes and Ramos which represents a complete and final payment of all monies due to or ever claimed to be due to each and every member of the Boyaki Group being Boyaki, Hernandez, Echegaray, the Cruzes and Herberto Ramos," (10) "John M. O'Quinn and Charles

20

B. Musslewhite, Jr. to receive all remaining monies to the registry of the 190th Court in the approximate amount of $3,270,000.00, upon approval of this Settlement Agreement by Judge Duggan and Judge Kerrigan," (11) "The parties agree to recommend these amounts to Justice Duggan and abide by this findings," (12) Boyaki parties recommend $150,000.00 to Boyaki and Hernandez for expenses and other $150,000.00 divided equally among Boyaki, Hernandez, Echegaray, and Cruzes in fees, (13) the Boyaki parties will submit to Justice Duggan for a final hearing regarding the division of fees between the lawyers on their camp, and the Boyaki parties agree to pay Judge Duggan's fees and be bound by his ruling, (14) the O'Quinn group agree that any client who survived the DLB 269 disaster and paid a full 40% fee will be reimbursed according to an appended schedule pursuant to Arbitrator Randy Butler's order, (15) the O'Quinn group agrees to pay two clients $4,000.00 in return for a full release and indemnification, and Boyaki agrees to pay one of the clients an additional $1,000, and (16) the O'Quinn group agrees to sign appropriate paperwork to release funds held in trust for a client.

The agreement states that it is "binding as to all who sign even if not all sign," and is signed by O'Quinn, Musslewhite, Boyaki, Hernandez, and Victor Cruz. An appendix labeled "Exhibit to Settlement Agreement" contains a schedule of fees from the parties' arbitration, and the additional clause providing, "Boyaki

21

and Musslewhite agree to negotiate any payments to potentially 7 more claimants in good faith but failure to agree does not abrogate the Settlement Agreement and they agree to present the dispute to Justice Duggan for final adjudication." That exhibit is initialed by each of the agreement's signatories.

Although the settlement agreement contains provisions for future performance (such as the execution of releases and indemnity agreements), the basic terms of the agreement are set forth and, more importantly, the agreement does not contain any language indicating that final agreement is conditioned upon anything in the future. This written agreement was filed in the 190th as a Rule 11 agreement on July 14, 2009.

In response to the O'Quinn group's motion for summary judgment to enforce this agreement, the Boyaki group argued that it reflected only a "tentative agreement." They argue the same thing in their brief here, pointing to the following as evidence that the Settlement Agreement filed a Rule 11 was only a tentative agreement that never materialized:

- their own characterization of the settlement in later correspondence as "tentative,"

- the trial court's July 29, 2011 order requesting the parties submit to the court "a document that: 1) reflects the terms of the settlement, 2) which of the terms of the settlement have been fulfilled, and 3) which settlement terms, if any, have either not been fulfilled or have been waived."

- the parties' May 21, 2012 "Parties' Joint Document of Current Status" in which the parties identify which obligations under the Settlement Agreement

22

have been performed, which ones have been waived, which ones have not been performed, and which ones the parties disagree about whether they have been performed

- the O'Quinn group's alleged objection to the Boyaki group's fees being paid

- a reference during a June 8, 2012 hearing to 15 drafts of a proposed confidential settlement agreement, and

- the trial court notices setting the case for trial.

According to the Boyaki group, these "facts show there was no agreement." It argues a jury should have been permitted to determine if there was an agreement—a view they claim the trial court demonstrated it shared by setting the case for trial. They further contend that an affidavit by Boyaki submitted as evidence in response to the Houston lawyer's motion for summary judgment demonstrates that "the alleged agreement is legitimately disputed, because, as set out in the record, many of the terms of the so-called agreement had not been fulfilled by" the O'Quinn group.

In sum, they contend that (1) the "so-called agreement is missing essential terms, i.e., dismissals, releases and indemnification," (2) "there were numerous aspects of the tentative agreement that still needed to be addressed," and (3) the "tentative agreement is filled with ambiguity."

In response, the O'Quinn group points out that, in a December 31, 2009 filing, the Boyaki group acknowledged the validity of the Rule 11, stating in their amended answer:

Since the filing of Plaintiffs' Original Petition the parties have settled all of their differences and therefore all of Plaintiffs claims are moot. Plaintiffs, as a result of the settlement, have filed their Motion to Dismiss this lawsuit. As all matters in controversy have been settled there has been accord and satisfaction, and release.

The O'Quinn group also notes that much of what the Boyaki group relies upon to demonstrate the alleged tentativeness of the agreement is either (1) not contained in the summary judgment record, or (2) is taken out of context. They further contend that the Boyaki group's arguments are misguided because all of the requirements under an agreement do not have to be performed for that agreement to be enforceable.

We agree that the question is not whether the settlement agreement had been fully performed, but instead whether the parties had reached a definitive agreement to settle that was specific and inclusive enough to be enforceable. *CherCo Properties, Inc.*, 985 S.W.2d at 265–66. Under Texas law, a settlement agreement can be binding premised upon promises for payments and actions in the future, so long as the writing is sufficiently clear as to the terms. *See, e.g., Padilla*, 907 S.W.2d at 460–61 ("Steidley accepted Padilla's *agreement* to pay the policy limits as acceptance of his earlier offer. Moreover, the letters reflect all material terms of the agreement; i.e., Padilla agreed to pay $40,000 in settlement of all claims, and the La Frances agreed to pay the hospital lien out of those proceeds. We

accordingly hold that the parties entered into a binding settlement agreement, evidenced by a writing sufficient to satisfy Rule 11.").

Here, the trial court correctly concluded that the Rule 11 agreement was sufficiently definite, memorialized the parties' intent to be bound by a settlement, and did not reflect that the parties conditioned the settlement upon future performance. While the parties' agreement did call for the future execution of certain indemnity agreements and other obligations, nothing in the agreement indicates the parties' intentions that those be conditions precedent to an enforceable agreement. Other courts have interpreted similar agreements to be enforceable absent indication that future performance was a condition to be enforceability. For example, in *Hardman v. Dault*, the San Antonio Court of Appeals concluded that a deadline in a settlement agreement for signing "final documents" was not evidence that the agreement was not effective upon execution:

> The settlement memorandum in this case sets out the essential terms of the agreement. No material or essential detail was left out. All that remained were the "final documents" necessary to carry out the agreement. Hardman claims the parties contemplated that signing final documents by January 1, 1997 was a condition precedent to the formation of an enforceable agreement. Since the documents were not signed by the deadline, Hardman says there was no contract. The issue, then, is whether the contemplated documentation was a condition precedent to the formation of a contract or simply a memorial of an already enforceable contract.
> . . . .
> The "final documents" provision neither suggests nor infers that the parties intended that the agreement was to be subject to any subsequent action by the parties, or that the signing of documents was

25

to be a condition precedent to the formation of an enforceable contract. Thus, since the settlement agreement contains all essential terms, and there being no fact issue concerning whether the parties intended the settlement agreement to be binding, the partial summary judgment enforcing the written settlement agreement is affirmed.

2 S.W.3d 378, 380 (Tex. App.—San Antonio 1999, no pet.). Likewise, the settlement agreement here providing for future performance did not render the agreement unenforceable. And nothing else the Boyaki group cites here demonstrates that the parties did not intend, at the time of execution, to be bound.

We overrule the Boyaki group's first and second issues.

**b.      The trial court's summary judgment was not barred by quasi-estoppel.**

The Boyaki group contends that "the trial court erred in not finding quasi-estoppel to defeat plaintiffs' claims." *See Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken" and applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."). Specifically, they argue that the O'Quinn group "failed to follow through or complete their obligations under the so-called contract, from failing to dismiss this case to opposing the lifting of sanctions, opposing payment to the Defendant, and not paying the Mexican Nationals, etc."

In response, the O'Quinn group contends that the evidence cited by the Boyaki group in support—i.e., "the unsworn statement by Appellant Boyaki about his views on the status of the case as of July 22, 2011 and an unsworn letter from him to opposing counsel, dated August 8, 2011"—is not proper summary-judgment evidence and, in any event, does not establish quasi-estoppel.

Other than reciting the law and the one-sentence argument quoted above, the Boyaki group has not articulated how quasi-estoppel applies in this case. Even assuming their assertions to be true and proper summary-judgment evidence, they do not cite any cases applying quasi-estoppel on analogous facts or assertions, and we have located none.

We overrule the Boyaki group's fifth issue.

### c. The trial court's award of attorneys' fees was not supported by sufficient evidence.

The trial court's summary judgment also awarded to the O'Quinn group $145,350.00 in attorneys' fees, as well as conditional appellate attorneys' fees. The Boyaki group argues that was improper, as the settlement agreement "does not mention attorneys' fees" and the O'Quinn group was not otherwise entitled to attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code. The Boyaki group also challenges the reasonableness and necessity of the attorneys' fees awarded. In response, the O'Quinn group contends that the Boyaki

27

group has waived various arguments and that, in any event, it complied with Chapter 38, and that the attorneys' fee award is proper.

"To recover attorney's fees under section 38.001, a . . . claimant must: (1) plead and prevail on a claim for which attorney's fees are permitted under section 38.001, (2) be represented by an attorney, (3) present the claim to the opposing party or his agent, and (4) demonstrate that the opposing party did not tender payment within thirty days after the claim was presented." *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 383 (Tex. 2011) (citing TEX. CIV. PRAC. & REM. CODE §§ 38.001, .002). The contract itself need not provide for attorneys' fees. *Helping Hands Home Care, Inc. v. Home Health of Tarrant County, Inc.*, 393 S.W.3d 492, 516 (Tex. App.—Dallas 2013, pet. denied).

"No particular form of presentment of a claim is required." *Id.* " However, neither the filing of a suit, nor the allegation of a demand in the pleadings can, alone, constitute a presentment of a claim or a demand that the claim be paid, within the meaning of section 38.002." *Id.* (citing *W. Cas. & Sur. Co. v. Preis*, 695 S.W.2d 579, 589 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.)).

If an agreement complies with Rule 11, then the party seeking to enforce the agreement may amend its pleading and add a breach of contract claim on that agreement. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (per curiam). That is what happened here; the O'Quinn

28

group amended its pleading to plead a breach-of-contract claim, i.e., that the Boyaki group breached the settlement agreement, that all conditions precedent to their claims for relief have been performed or occurred, and that attorneys' fees should be awarded.

In its motion for summary judgment on that claim, the O'Quinn group proffered affidavits that averred the Boyaki group "materially breached" the Rule 11 agreement by failing to execute Mutual Releases, and by

> forcing [the O'Quinn group] to go to the needless time, effort and expense of getting [the Boyaki group] to withdraw their motion for new trial in the 327th; preparing for and appearing at multiple status conferences and hearings before this Court; amending their petition; and researching and preparing and filing this Motion for Summary Judgment to enforce the mediated Rule 11 Settlement Agreement.

As supporting evidence, the O'Quinn group attached copies of the settlement agreement, correspondence and transcripts related to various hearings, correspondence between the parties, and two attorneys' fees affidavits.

The trial court's summary judgment stated that "the mediated Rule 11 Settlement Agreement was intended to resolve all pending litigation in all courts involving the parties," granted the O'Quinn group's "Motion for Summary Judgment to Enforce Rule 11," and awarded $145,350.00 in "reasonable and necessary attorneys' fees . . . for services rendered through the summary judgment of this suit," as well as conditional appellate attorneys' fees, costs and interest. No

other money damages were awarded, but the trial court ordered funds remaining in the registry of the court to be disbursed and all claims dismissed with prejudice.

We consider two aspects of the fee award. First, we consider whether Chapter 38 affords a recovery of attorneys' fees when a party prevails in seeking specific performance enforcing a Rule 11 agreement but not a money judgment. Second, we determine whether the summary-judgment evidence in this case conclusively proved the reasonable and necessary amount of recoverable attorneys' fees. To the first question, we answer "yes": when a party prevails in obtaining enforcement by specific performance of a Rule 11 agreement, it has recovered relief that will support an award of Chapter 38 attorneys' fees. To the second, we answer "no": the O'Quinn group's evidence did not establish its requested attorneys' fees were reasonable and necessary.

### (a) Attorneys' fees for enforcement of a settlement agreement by order of specific performance

The availability of attorneys' fees under a particular statute is a question of law for the court. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). We review the trial court's decision to award attorneys' fees de novo. *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 546 (Tex. App.—Dallas 2005, no pet.).

Section 38.001 authorizes an award of attorneys' fees "in addition to the amount of a valid claim" in a breach-of-contract case. TEX. CIV. PRAC. & REM.

CODE § 38.001(8) (West 2008). Thus, a threshold requirement for recovering attorneys' fees under Chapter 38 is a recovery that compensates for actual damages sustained. *MBM Financial Corp. v. Woodlands Operating Co.*, L.P., 292 S.W.3d 660, 666 (Tex. 2009) ("To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages.").

The courts of appeals are split on the issue of whether recovery of monetary damages is necessary to support a claim for attorney's fees under Chapter 38 or whether prevailing on a breach-of-contract claim and recovering relief by an order of specific performance of the contract is sufficient to support such an award. The Austin and Texarkana courts have concluded that attorneys' fees under Chapter 38 may not be awarded to the prevailing party in a breach-of-contract case absent a monetary recovery. *Haubold v. Medical Carbon Research Inst.*, 2014 WL 1018008 at \*5–6 (Tex. App.—Austin March 14, 2014, no pet.) (mem. op.) (concluding that specific performance in enforcing Rule 11 agreement was not a recovery of actual damages and thus attorney's fees incurred in enforcing the agreement were not recoverable); *Berg v. Wilson*, 353 S.W.3d 166, 182 (Tex. App.—Texarkana 2011, pet. denied) (concluding that "because Wilson did not recover actual damages, she was not entitled to recover attorneys' fees on her [Rule 11] breach of contract claim," but affirming award on alternative basis).

In contrast, this Court has held that relief in the form of specific performance of the contract is a recovery that remedies actual damage for a valid claim. *See Albataineh v. Eshtehardi*, 2013 WL 1858864, at *1–2 (Tex. App.—Houston [1st Dist.] May 2, 2013, no pet.) (mem. op.) (holding that "an award of specific performance of the parties' settlement and of the restrictive covenant in the special warranty deed" supported an award of Chapter 38 attorneys' fees and rejecting the argument that money damages in addition to relief by specific performance were required); *see also* TEX. CIV. PRAC. & REM. CODE § 38.005 ("This chapter shall be liberally construed to promote its underlying purposes.").

Other courts of appeals have likewise recognized that a "valid claim" under section 38.001(8) is not limited to a claim for monetary damages, but also encompasses specific performance of the agreement to avoid actual damage. *Woody v. J. Black's, L.P.*, 2013 WL 5744359, at *6 (Tex. App.—Amarillo Oct. 13, 2013, pet. denied) (mem. op.) (recognizing that an "injunction enforcing specific performance of a contract is something of value" sufficient to support Chapter 38 attorneys' fees and rejecting argument that an award of monetary damages were required); *Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that award of specific performance of arbitration agreement permitted recovery of Chapter 38 attorneys' fees and rejecting argument that monetary damages were required); *Williams v.*

32

*Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (interpreting Chapter 38 to authorize an award of attorneys' fees when a party "successfully prosecutes a claim founded on . . . written contracts.").

These cases reflect the courts' recognition that an injunction to enforce specific performance under a contract is of pecuniary value if that enforcement prevents actual loss to the aggrieved party. *Butler*, 51 S.W.3d at 797 (quoting *Rodgers v. RAB Invs., Ltd.*, 816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ) (recognizing that injunction enforcing covenant not to compete was something of value)). This meaningful recovery of value in these cases renders them distinguishable from cases denying recovery of attorneys' fees because the prevailing party had no recovery at all (or at most a nominal recovery) for breach of the underlying contract. *See MBM Fin. Corp.*, 292 S.W.3d at 663 ("[T]he Woodlands' fee award cannot be affirmed based on Chapter 38" because they "can recover neither actual nor nominal damages."); *Green v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (reversing attorneys' fees award because although jury found that contract was breached, it awarded zero damages for breach).

The O'Quinn group obtained an award of specific enforcement of the settlement agreement and an end to the ongoing litigation in the case. The trial court heard evidence that the enforcement was necessary because the Boyaki group

refused to acknowledge the validity of the Rule 11 agreement, instead continuing to litigate the case. A judgment "requiring specific performance of a material contract right" in a Rule 11 agreement is an award of value that affords relief from impending actual damage. *Albataineh*, 2013 WL 1858864, at *2. Thus, if the evidence supports a finding that such relief is of more than nominal economic value, we hold that Chapter 38 affords the O'Quinn group its attorneys' fees, provided that all other conditions to a right to recovery under that chapter are met. *Cf. Ganske v. WRS Group, Inc.*, 2007 WL 1147357, at *2–3 (Tex. App.—Waco April 18, 2007, no pet.) (mem. op.) (permitting an award of attorneys' fees from prior litigation as actual damages for breach of settlement agreement).

### (b) Attorneys' fee evidence

We next turn to whether the O'Quinn group conclusively proved its reasonable and necessary attorneys' fees. Because they did not, we reverse the award of attorneys' fees and remand the case.

The supreme court has recently addressed the specificity required of an affidavit supporting attorneys' fees under the lodestar method.[3] *See Long v.*

---

[3] "Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). "First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *Id.* (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied)). "The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar." (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir.1995)). The court may

*Griffin*, ___ S.W. 3d ___, No. 11-1021, 2014 WL 1643271 (Tex. April 25, 2014).

Under the supreme court's analysis in *Long*, the O'Quinn group's affidavits were insufficient to support the trial court's award.

In *Long*, the supreme court characterized the attorney affidavit at issue as "only offer[ing] generalities":

> It indicates that one attorney spent 300 hours on the case, another expended 344.50 hours, and the attorneys' respective hourly rates. The affidavit posits that the case involved extensive discovery, several pretrial hearings, multiple summary judgment motions, and a four and one-half day trial, and that litigating the matter required understanding a related suit that settled after ten years of litigation. But no evidence accompanied the affidavit to inform the trial court the time spent on specific tasks. *See El Apple* [*Ltd. v. Olivas*], 370 S.W.3d [757,] 763 [(Tex. 2012).] The affidavit does claim that 30% of the aggregate time was expended on the assignment claim (part of which the Griffins prevailed on) and that the assignment issue was inextricably intertwined with matters that consumed 95% of the two attorneys' time on the matter. But without any evidence of the time spent on specific tasks, the trial court had insufficient information to meaningfully review the fee request. [*City of Laredo v.*] *Montano*, 414 S.W.3d [731,] 736–37[(Tex. 2013)]; *El Apple*, 370 S.W.3d at 764.

The two attorneys' fees affidavits at issue here suffer the same deficiencies. Neil McCabe's affidavit described the litigation, set forth his experience, listed the appropriate lodestar factors, and stated his view that the Boyaki group had, by September 15, 2009, "breached a material term" of the Rule 11 agreement. It then

---

then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Gonzales*, 72 S.W.3d at 412. The attorneys' affidavits in this case sought to prove up attorneys' fees under this lodestar method.

35

described his work in generalities similar to that rejected by the supreme court in

*Long*:

> [S]ince September 15, 2009, I have attended several hearings, prepared a Motion for Temporary Injunction, prepared for the hearing. I have reviewed various drafts of letters and email correspondence to opposing counsel. I have communicated to my client, The O'Quinn Law Firm, the status of implementation of the settlement agreement, reviewed Texas cases on the enforcement of Rule 11 settlement agreements, reviewed Plaintiffs' First Amended Original Petition, reviewed Plaintiffs' Motion for Summary Judgment to Enforce Rule 11 Settlement with supporting affidavits. I have also had a number of additional conferences with representatives of my client and co-counsel. Accordingly, since September 15, 2009, I have spent at least 98 hours in rendering the above-described necessary legal services . . . in enforcement of the mediated Rule 11 Settlement Agreement.

Stacy Little, another attorney at a different law firm, proffered an affidavit containing similar generalities about tasks and the time necessary to perform them:

> [S]ince July 22, 2011, I have prepared various drafts of letters and email correspondence to and for Charles Musslewhite, my co-counsel, I have communicated to my client, The O'Quinn Law Firm the status of implementation of the settlement agreement, researched and reviewed Texas cases on the enforcement of Rule 11 settlement agreements, drafted and edited Plaintiffs' First Amended Original Petition, drafted and edited Plaintiffs' Motion for Summary Judgment to Enforce Rule 11 Settlement, with supporting affidavits, and prepared a proposed Final Summary Judgment. I have also had a number of additional conferences with representatives of my client and co-counsel. Accordingly, since July 22, 2011, I have spent at least 215 hours in rendering the above-described necessary legal services.

Because the O'Quinn group's attorneys' fees evidence is legally insufficient, we sustain the Boyaki group's fourth issue. Under *Long*, the appropriate remedy is

a "remand to the trial court for a redetermination of attorney's fees." *Long*, 2014 WL 163271 at *3 ("[U]nder the lodestar method, no legally sufficient evidence supports the amount of attorney's fees the trial court awarded because no evidence indicates the time expended on the specific tasks for which attorney's fees may be recovered. Accordingly, . . . [we] reverse the court of appeals' judgment and remand to the trial court for a redetermination of attorney's fees consistent with this opinion.").

## SANCTIONS

On January 28, 2009, the 190th court issued an Order for Sanctions against Walter Boyaki, Ruben Hernandez, and Heriberto Ramos for the frivolous removal of the case to federal court. The following background facts are taken from the court's 10-page sanctions order, which included several findings of fact and conclusions of law:

On December 30, 2008, the O'Quinn group sought and obtained a TRO from the ancillary Harris County judge, and set a hearing for a related temporary injunction in the 190th for January 9, 2008. The Boyaki group was represented at the TRO hearing by Ramos. At the TRO hearing, Ramos threatened the O'Quinn group that Boyaki would remove the case. The O'Quinn group sent the Boyaki group a letter immediately after the hearing reflecting the view that there was no basis for removal, any removal would be in bad faith, and putting it on notice that

37

the O'Quinn group would seek sanctions if the case were removed. The Boyaki group did not respond.

On January 7, 2008, with notice of the injunction hearing set for January 9, Boyaki, Hernandez, and Ramos signed and filed a notice of removal in district court. On the afternoon of January 9, 2009, the federal district court, Judge Kenneth Hoyt presiding, *sua sponte* remanded the cause to the 190th court, noting that no diversity or federal question jurisdiction existed. The remand order also stated: "This was a frivolous removal, violating FRCP, Rule 11."

The trial court's sanction order notes that the sanctions are "based on the totality of the circumstances surrounding Boyaki, Hernandez and Ramos filing Notice(s) of Removal in the federal court on January 7, 2009." The court finds that Boyaki, Hernandez, and Ramos "have engaged in a pattern of misconduct and abuse of the judicial process," and that the "sanctions in [the] Order are issued pursuant to the Court's inherent authority to sanction bad faith conduct during litigation from the conduct outlined [in the order] and for violations of the Texas Disciplinary Rules of Professional Conduct, the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Code." Specifically, the court concluded that the removal was filed "for the purposes of harassment and/or delay and to prevent this Court from proceeding with a scheduled hearing on a Temporary Injunction request." The order required Boyaki, Hernandez, and

38

Ramos to each (1) pay $1,200 to O'Quinn & Associates, (2) pay $1,200 to Musslewhite & Associates, and (3) complete 10 hours of Continuing Legal Education Courses in Ethics.

## A. Applicable law

Rule 13 authorizes the sanctions listed in rule 215.2(b) of the Rules of Civil Procedure against a party, a party's attorney, or both, for filing pleadings, motions, or other papers that are groundless and brought in bad faith, or filed to harass. TEX. R. CIV. P. 13. Appropriate sanctions under rule 215.2(b) include attorneys' fees, as awarded here. TEX. R. CIV. P. 215(2)(b); *see Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990); *Laub v. Pesikoff*, 979 S.W.2d 686, 693 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The party seeking sanctions must overcome the presumption that papers are filed in good faith. *See* TEX. R. CIV. P. 13. In awarding sanctions, the trial court must state, with particularity, the grounds that constitute good cause for imposing sanctions. *Id.*; *Gorman v. Gorman*, 966 S.W.2d 858, 867 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

Texas courts have inherent judicial power that they may call upon to aid in the preservation of their independence and integrity. *Public Util. Comm'n of Texas v. Coffer*, 754 S.W.2d 121, 124 (Tex. 1988). This inherent judicial power encompasses the inherent power to sanction for abuse of the judicial process that may not be covered by rule or statute. *Kutch v. Del Mar College*, 831 S.W.2d 506,

510 (Tex. App.—Corpus Christi 1992, no writ). Inherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process. *Id.*

We review the imposition of sanctions for abuse of discretion. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). We may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules or principles, such that its ruling was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). In conducting our review, we are not limited to a review of the "sufficiency of the evidence" to support the trial court's findings; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion by imposing the sanction. *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003).

**B. Analysis**

The Boyaki group first contends that the trial court's sanctions order was void. Specifically, it argues that the 190th district court lacks jurisdiction to impose sanctions for invocation of federal jurisdiction because that power is

reserved to the federal court. It cites the federal removal statute for the proposition that it was "within Judge Hoyt's authority to assess attorneys' fees in the event the removal was improperly made." *See* 28 U.S.C.A. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). It also cites Texas state court authority for the proposition that "the only conduct the state district court could sanction is pre-removal conduct." *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding) (per curiam) ("[W]e conclude that state courts retain jurisdiction after removal of a case to federal court to sanction lawyers for pre-removal conduct so long as the sanction does not operate upon the merits of the underlying action.").

We find this authority inapposite because reviewing the circumstances as a whole reflects that the trial court's sanctions are not limited to the merits of the removal, but instead the improper motivation for the removal and the effect upon the state court's function. In *Stratton v. Frankwell Inv. Service (Texas), Inc.*, we affirmed post-remand sanctions based upon reasoning similar to that expressed by the 190th court here. Nos. 01-99-00405-CV, 01-99-00459-CV, 2000 WL 233110, at *3–4 (Tex. App.—Houston [1st Dist.] March 2, 2000, pet. denied) (mem. op.). In that case, the sanctioned lawyer argued that because his name was not on filings that effectuated what the trial court characterized as "wrongful removal," he could

41

not be sanctioned for that removal.  *Id.*  We declined to take such a narrow view of the trial court's order, explaining,

> As noted above, Stratton confines his arguments to the "wrongful removal" finding in the order of December 10, 1998. In narrowing his challenge in this manner, Stratton isolates this finding from the remainder of the sentence in which it appears, which states:
>
> > "The Court finds that Defendant Erxleben and his counsel wrongfully removed the case to federal court without authority and without valid cause and for the sole purpose of thwarting the Court's notice that the case was assigned for trial."
>
> The complete sentence clarifies that the trial court did not confine its ruling to the "wrongful removal," but considered a totality of circumstances that resulted in the unnecessary postponement of the trial. The trial court also determined that Erxleben and counsel acted without authority, without valid cause, and with the sole purpose of avoiding trial. These additional findings, which Stratton does not challenge in this issue, further reflect that the trial court resolved several controversies in awarding sanctions, and that the trial court resolved significantly disputed facts in exercising its discretion under rule 13. We are thus constrained by the standard of review to consider the evidence before the trial court in the light most favorable to the sanction award.

2000 WL 233110, at *3.

Similarly, here the court found in its sanctions order that Boyaki, Hernandez and Ramos "filed their Notices of Removal in the U.S. District Court for the purposes of harassment and/or delay and to prevent this Court from proceeding with a scheduled hearing on a Temporary Injunction request."  While the federal district court was in the best position to determine if federal jurisdiction existed— which it found did not—the state court may determine if the circumstances

42

surrounding a removal indicate that it a filing was made for the purpose of disruption and delay in the state court.[4]

The Boyaki group next contends that, in the alternative, "the sanctions ordered by the Trial Court were unduly harsh." It asserts that "it happens all the time that a party to state court proceeding invokes federal jurisdiction to forestall an unfavorable state court action." It argues that "[w]hile this may lead to a squandering of judicial resources, and is no doubt frustrating for state court judges, there are limits of reason as to how a court should respond." Because imposing the cost of the O'Quinn group's fees would have "been more than enough to teach the [lawyers] any lesson and to compensate the other parties for any harm," the Boyaki group asks us to find that the trial court abused its discretion by also "ordering ten hours of ethics education."

Relatedly, the Boyaki group argues "no harm-no foul." They contend that we should presume that the removal was done in good faith, assume that the federal district court would have sanctioned them if their removal was frivolous, and be mindful of the fact that their removal of the case only caused a one-week

---

[4] We contrast the facts here with those in *Ricardo N. Inc. v. Turcios de Argueta*, 907 S.W.2d 423, 429 (Tex. 1995). The defendant there removed a case to federal court shortly before trial, and the federal court remanded four years later with specific findings that the case had been removed in good faith and did not violate FRCP 11. *Id*. The state trial court nonetheless sanctioned the defendant for removing the case for purposes of delay. *Id.* The supreme court held that the "trial court abused its discretion in sanctioning [the defendant] for removing the case in bad faith when the federal court had already determined that the removal was not in bad faith." *Id.*

43

delay over the temporary injunction hearing (at which no relief was granted to the O'Quinn group anyway).[5]

The Boyaki group has cited no authority for its argument that requiring attorneys to attend classes focused on ethics is unduly harsh or insufficiently tailored to the sanctioned conduct. We thus reject the argument that compelling attendance in ethics classes was excessive or unduly harsh. And we will not presume that the Boyaki group's removal was for a proper purpose when the federal district court and the state trial court both found that it was not, and that determination is supported by evidence in the record. The Boyaki group has not established that the trial court's determination that they acted in bad faith for the purpose of delay was an abuse of discretion.

The Boyaki group next contends that the sanctions against Ramos were particularly overreaching because the "most he did in the state case was indicate, at the December 30 hearing, that Boyaki would attempt to remove the case," and "signed only the notice of removal to federal court." Accordingly, it argues that the sanctions against Ramos should be reversed.

The Boyaki group's notice of appeal states "Notice is hereby given that Defendants in the above named case Walter L Boyaki, Ruben Hernandez, and

---

[5]     They also contend, with no citation to authority, that the O'Quinn group lacked "clean hands" such that "sanctions were inappropriate against one side when it was raining on both sides of the field."

Miranda & Boyaki hereby appeal the Summary Judgment [and] the Order of Sanctions signed on January 28, 2009, to include the sanctions against Heriberto Ramos, a non-party/non-attorney." Ramos is not a party in the underlying case, Ramos has not filed his own notice of appeal, *see* Tex. R. App. P. 25.1(c)(party seeking to alter judgment must file notice of appeal) and the Boyaki group does not purport to represent Ramos. Because the Boyaki group does not have standing to challenge sanctions against Ramos, we do not consider their arguments challenging sanctions against Ramos. *See Bahar v. Lyon Fin. Serv., Inc.*, 330 S.W.3d 379, 388 (Tex. App.—Austin 2010, pet. denied) (party who is not harmed by sanctions against another lacks standing to challenge sanctions on appeal).

Finally, the Boyaki group contends that it was afforded inadequate due process with regard to the sanctions proceeding. It complains that, despite its objection, the sanctions hearing went forward with twenty-one new complaints that had been added that morning. No objection is found in the record where cited by the Boyaki group. In any event, while the O'Quinn group did file an amended motion for sanctions the morning of the sanctions hearing complaining of several misrepresentations allegedly made in court filings by the Boyaki group, no one disputes that the original motion—to which the Boyaki group had notice and responded—complained about the removal. The trial court's sanction order states,

> After hearing arguments and reviewing the evidence, the Court, without ruling on the alleged pattern of repeated and continuous

45

misrepresentations raised in the amended motion for sanctions, hereby enters this Order awarding sanctions for counsel's conduct with regard to the removal.

Accordingly, assuming that the Boyaki group lacked sufficient notice of the new complaints, and assuming that they properly challenged the lack of notice of the new complaints, they cannot demonstrate they were harmed as the new complaints did not form the basis of the trial court's ruling.

We overrule the Boyaki group's third issue.

## CONCLUSION

We reverse and remand the trial court's attorneys' fees award. The trial court's judgment and sanctions order are otherwise affirmed.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.